UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:24-cv-00191-FDW

| | |
|---|---|
| SOLOMON D. NORWOOD, a/k/a ABDULLAH RAHEEM, </br></br>Plaintiff,</br></br>vs.</br></br>BURKE COUNTY SHERIFF'S DEPARTMENT DETENTION CENTER-JAIL, et al.,</br></br>Defendants. | **ORDER** |

**THIS MATTER** is before the Court on initial review of Plaintiffs' Complaint [Doc. 1], filed under 42 U.S.C. § 1983. See 28 U.S.C. §§ 1915(e) and 1915A. Plaintiff is proceeding in forma pauperis. [Docs. 2, 4].

## I.   BACKGROUND

On July 16, 2024, Plaintiff Solomon D. Norwood ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 against the following Defendants: (1) "Burke County Sheriff's Department Detention Center-Jail;" (2) Captain FNU Huffman; (3) Sergeant FNU Lail; (4) Sergeant FNU Beaver; (5) Deputy Corporal Robins; (6) "Deputy/Jailer" FNU Bass; (7) John/Jane Doe, Burke County Sheriff; (8) and "Deputy/Jailer" FNU Chatham. [Doc. 1 at 2-3, 14-15]. Plaintiff purports to sue all Defendants in their individual and official capacities. [See id.]. He alleges as follows.

Plaintiff "has believed in the Islamic faith and its tradition since the age of 15-18 years old" and follows the religion as an Ahlus Sunnah Wa Jama'ah Sleefiyah Salifee Muslim. [Id. at 18]. From June 2022 to April 2023, Plaintiff was detained at the Burke County Detention Center

(the "Jail")[1] in Morganton, North Carolina.[2] [Id. at 13, 16]. On his detainment there, Plaintiff complained to Defendant Robins about the nonexistent "practice of other religious beliefs" and that the Jail favors Christianity over other religions. [Id. at 16]. Plaintiff sought with Defendants Chatham and Robins to participate in "Islamic Services and/or the sacred obligations of Jumu'ah on Friday(s)." [Id.]. Defendant Robins threatened to place Plaintiff in solitary-like confinement in a different housing unit "upon [Plaintiff] wanting to practice his religious beliefs." [Id.]. Plaintiff hand delivered his "official complaint" to Sergeant Stephens. [Id.]. Plaintiff further discovered from Defendants Lail and Beaver that he was not allowed to pray or study his religious beliefs with other detainees. On several occasions Plaintiff witnessed Defendant Bass "assist[ing] with the outside [Christian] guests while enjoining[3] open sermons and prayer times within the housing unit." [Id.]. On these occasions, Defendants Lail and/or Beaver were informed that Plaintiff did not want to participate and wanted to be temporarily reassigned to another area until the conclusion of these services. [Id.].

During the Islamic month of Ramadan, Defendant Huffman informed Plaintiff that, if he wanted to participate, he and other participants "were to save their trays" because the Jail would not accommodate "Islamic standards." [Id. at 17]. During Thanksgiving and Christmas, the Jail decorated for Thanksgiving and Christmas and held "special religious services enforced upon the mass population." [Id.]. Plaintiff filed a grievance and "wrote the Sheriff," but did not receive a response. "[P]articipating or attending in ANY other religious belief(s) weakens [Plaintiff's] belief

---

[1] In his Complaint, Plaintiff refers to the Jail as "the facility." [See Doc. 1 at 16-18].

[2] Plaintiff is now incarcerated at the Tabor Correctional Institution in Tabor City, North Carolina. [Doc. 1 at 4, 13]. According to the North Carolina Department of Adult Correction inmate locator website, Plaintiff is currently serving a 15-year minimum sentence.

[3] The Court is unsure what meaning Plaintiff ascribes to the word "enjoining" here, as it is typically used in legal documents to mean prohibiting.

system and in fact constitutes religious innovation." [Id.]. Plaintiff's attempts to be removed and congregate, pray, and study with other Muslims in a private setting "were negligently ignored" and Jail staff forced him to participate in Christian services, never offering him temporary solutions. [Id.]. Defendant Huffman forbade Plaintiff from praying, ordering Islamic materials, and eating "proper nutrients in regards to His Islamic traditions." [Id. at 18].

Plaintiff claims RLUIPA, due process, and Eighth Amendment violations, as well as "general & comperative [*sic*]" negligence and intentional infliction of emotional distress.[4] [Id. at 3]. Plaintiff alleges having suffered mentally, physical, and spiritually. [Id. at 18]. Plaintiff seeks various injunctive measures and monetary relief, including punitive damages. [Id. at 5].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear

---

[4] The Court will only address those claims fairly raised by Plaintiff's Complaint.

3

failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166, 143 S.Ct. 1444 (2023).

### A. Defendant "Burke County Sheriff's Department Detention Center-Jail"

A jail is not a "person" subject to suit under § 1983, see Brooks v. Pembroke Jail, 722 F.Supp. 1294, 1301 (E.D.N.C. 1989), nor are sheriff's departments legal entities capable of being sued in North Carolina, Mayden v. McFadden, No. 3:23-cv-568-MOC, 2024 WL 762358, at *3 (W.D.N.C. Feb. 21, 2024). The Court, therefore, will dismiss this putative Defendant.

### B. Free Exercise and RLUIPA

To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that: (1) he held a sincere religious belief and (2) that his religious practice has been substantially burdened by a prison policy or practice. See generally Hernandez v. C.I.R., 490 U.S. 680, 699 (1989); Greenhill v. Clarke, 944 F.3d 243, 253 (4th Cir. 2019). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner, 482 U.S. at 89). "A substantial burden either puts pressure on a person to change his religious beliefs or puts that person to a choice between abandoning his religion or following his beliefs and losing some government benefit." Firewalker-

4

Fields v. Lee, 58 F.4th 104, 114 (4th Cir. 2023) (citing Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006)).  If that threshold showing is made, the prisoner must then show that the practice or regulation is not "reasonably related to legitimate penological interests." Id. (quoting Turner, 482 U.S. at 89).

The Religious Land Use and Institutionalized Persons Act (RLUIPA) provides "greater protection for religious exercise than is available under the First Amendment." Ramirez v. Collier, 152 S.Ct. 1264, 1277 (2022) (quoting Holt v. Hobbs, 574 U.S. 352, 357 (2015)).  The RLUIPA provides that no government may "impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... unless the government demonstrates that imposition of the burden on that person ... is in furtherance of a compelling governmental interest ... [and] is the least restrictive means of furthering that compelling governmental interest." Faver v. Clarke, 24 F.4th 954, 959-60 (4th Cir. 2022) (quoting 42 U.S.C. § 2000cc-1(a)).  A "substantial burden" has the same meaning under the First Amendment and RLUIPA, that is, "a substantial burden is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs or one that forces a person to choose between following the precepts of [his] religion and forfeiting governmental benefits, on the one hand, and abandoning the precepts of [his] religion on the other hand." Greenhill v. Clarke, 944 F.3d 243, 250 (4th Cir. 2019) (citing Lovelace, 472 F.3d at 187).  Once an inmate makes the initial requisite showing, the burden shifts to the government to show that the prison policy is the least restrictive means of further a compelling governmental interest under RLUIPA. Id.  RLUIPA only provides equitable relief to prisoners.  See Wall v. Wade, 741 F.3d 492, 496 n.5 (4th Cir. 2014).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, the Court finds that Plaintiff's free exercise claim against Defendants Robins and

5

Huffman passes initial review as not clearly frivolous. Plaintiff, however, has failed to state such a claim against the remaining Defendants because his allegations do not support that they substantially burdened Plaintiff's religious practice. That is, Plaintiff alleges only that he "sought" with Defendant Chatham to participate in a Muslim service on Fridays and that he "discovered" from Defendants Lail and Beaver that he was not allowed to pray or study his religious beliefs with other detainees. The Court, therefore, will dismiss this claim against the remaining Defendants.

The Court will also dismiss Plaintiff's RLUIPA claim because he has been transferred to long-term imprisonment in the North Carolina Department of Adult Correction and any claim thereunder is, therefore, moot. Firewalker-Fields, 58 F.4th at 113-14; see Rendelman v. Rouse, 569 F.3d 182, 186-87 (4th Cir. 2009).

C. **Establishment Clause**

"Congress shall make no law respecting an establishment of religion." U.S. Const. amend. 1. Recently, the Supreme Court in Kennedy v. Bremerton Sch. Dist., 597 U.S. 507, 142 S.Ct. 2407 (2022), "upended" the old "one-size-fits-all Establishment Clause test" from Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971), and "instructed that the Establishment Clause must be interpreted by reference to historical practices and understandings." Firewalker-Fields, 58 F.4th at 121-22 (quoting Kennedy, 597 U.S. at 510) (internal quotation marks omitted)). The "government may not, consistent with a historically sensitive understanding of the Establishment Clause, 'make a religious observance compulsory.'" Kennedy, 597 U.S. at 537 (quoting Zorach v. Clauson, 343 U.S. 306, 314 (1952)). "Government may not coerce one to attend church, nor may it force citizens to engage in a formal religious exercise," as "coercion along these lines was among

the foremost hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment." Id. (internal quotation marks and citations omitted).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, the Court finds that Plaintiff's First Amendment Establishment Clause claim against Defendants Lail and Beaver survives initial review as not clearly frivolous. Plaintiff, however, has failed to state such a claim against the remaining Defendants. The Court, therefore, will dismiss this claim against the remaining Defendants.

### D. Official Capacity Claims

Plaintiff's official capacity claims are in substance claims against the Burke County Sheriff's Office. Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099 (1985) (quoting Monell v Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 (1978)). The Office of Sheriff is not liable under § 1983 for an employee's acts "unless action pursuant to official municipal policy of some nature caused [the] constitutional tort." Collins v. City of Harker Heights, 503 U.S. 115, 120-21, 112 S.Ct. 1061, 1066 (quoting Monell, 436 U.S. at 691, 98 S.Ct. at 2036). That is, "[f]or a governmental entity to be liable under section 1983, the official policy must be the moving force of the constitutional violation." Moore v. City of Creedmoor, 345 N.C. 356, 366, 481 S.E.2d 14, 21 (1997) (internal quotation marks and citations omitted). "Thus, the entity's 'policy or custom' must have played a part in the violation of federal law." Id. (quoting Monell, 436 U.S. 658, 694, 98 S.Ct. at 2037-38).

Here, while Plaintiff alleges that "the facility favors Christianity over ALL others," that he was not allowed to pray or study his religious beliefs with other detainees at the Jail, and that "the facility served and partook … with special religious services upon the mass population," Plaintiff failed to connect these alleged incidents and practices at the Jail to any Sheriff's Office policy or

7

allege that such policy was the moving force behind any constitutional violation by the individual Defendants. The Court, therefore, finds that Plaintiff failed to state a claim against the Office of Sheriff and the Court will dismiss Plaintiff's official capacity claims.

**E.     Due Process**

In the absence of any other possible due process claim, the Court assumes Plaintiff asserts that his due process rights were violated by Defendant John/Jane Doe's failure to reply to his correspondence, presumably regarding the Jail's holiday decorations and religious services. [See Doc. 1 at 17]. "[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). "An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance procedure." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017). The Court, therefore, will dismiss this claim.

**F.     State Law Claims**

Plaintiff purports to assert state law claims for negligence and intentional infliction of emotional distress. To state a claim for negligence, Plaintiff must allege: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach. Tyner v. Kershaw County, No. 2:17-cv-021131-BHH-MGB, 2017 WL 6541364 (D.S.C. Dec. 4, 2017) (citations and quotation marks omitted). Plaintiff cannot convert a claim based on intentional conduct to a negligence claim by simply labeling the conduct negligent. See Wilson v. Gaston County, No. 3:13-cv-58-GCM, 2013 WL 1891276, at *4 (W.D.N.C. May 6, 2013). Plaintiff here alleges only that his attempts to be removed from participating in "other religious belief(s)" and congregate, pray, and study with

other Muslims in a private setting were "negligently ignored," presumably by Defendants Lail and/or Beaver. [See Doc. 1 at 16-17]. The Court, therefore, will dismiss this claim.

The essential elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress. Foster v. Crandell, 181 N.C.App. 152, 167, 638 S.E.2d 526, 537 (2007), disc. rev. denied, 361 N.C. 567, 650 S.E.2d 602 (2007). Plaintiff alleges only that he suffered mentally, physically, and spiritually. He does not allege extreme or outrageous conduct or that such conduct was intended to cause severe emotional distress. Plaintiff, therefore, has failed to state a claim for intentional infliction of emotional distress. The Court will also dismiss this claim.

## IV.     CONCLUSION

In sum, the Complaint passes initial review under 28 U.S.C. §§ 1915A and 1915(e) in accordance with the terms of this Order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that all claims asserted in this matter as to all Defendants are hereby **DISMISSED** for failure to state a claim, except for Plaintiff's individual capacity First Amendment free exercise claim against Defendants Robin and Huffman and Plaintiff's individual capacity Establishment Clause claim against Defendants Lail and Beaver, which are allowed to pass initial review.

**IT IS FURTHER ORDERED** that Defendants Burke County Sheriff's Department Detention Center-Jail, FNU Bass, John/Jane Doe, and Chatham are hereby **DISMISSED** as Defendants in this matter.

The Clerk is respectfully instructed to mail four (4) blank summonses to Plaintiff to fill out and identify Defendants Huffman, Lail, Beaver, and Robins, and then return the summonses to the

Court.  Plaintiff is required to provide the necessary information for the U.S. Marshal to timely effectuate service on these Defendants.  When the Court receives the summonses from Plaintiff, the Clerk shall direct the U.S. Marshal to effectuate service upon the Defendants.

**IT IS SO ORDERED**.

Signed: August 26, 2024

Frank D. Whitney
United States District Judge